Ray T. Miller v. Commissioner.
Miller v. Commissioner
Docket No. 4236.
United States Tax Court
1945 Tax Ct. Memo LEXIS 141; 4 T.C.M. (CCH) 749; T.C.M. (RIA) 45233; June 27, 1945
*141 Petitioner failed to sustain his burden of proof that the common stock of Continental Shares, Inc. became worthless in the taxable year 1941. Wayland K. Sullivan, Esq., 1708 Union Commerce Bldg., Cleveland, O., for the petitioner. W. W. Kerr, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $2,217.71 in the petitioner's income tax for the year 1941. The single issue is whether or not certain shares of stock of Continental Shares, Inc., held by the petitioner, became worthless in 1941 and thus deductible from his gross income. Findings of Fact Certain facts were stipulated and admitted in the pleadings. Insofar as material to the issue, they are as follows: The petitioner is an individual residing in Shaker Heights, Ohio. He filed his income tax return for the taxable year with the collector of internal revenue for the eighteenth district of Ohio. The petitioner made the following purchases, at the dates, and for the considerations indicated: Apr. 1, 1929 - 50 shares of International Shares
$ 4,000.00
Apr. 12, 1929 - 50 shares of International Shares
3,350.00
May 1, 1930 - 150 shares of Continental Shares, Inc., received in exchange
for the above 100 shares of International Shares
(7,350.00)
May 2, 1929 - 100 shares of Continental Shares, Inc.
7,250.00
July 1, 1929 - 100 shares of Continental Shares, Inc.
6,500.00
Feb. 19, 1931 - 200 shares of Continental Shares, Inc.
1,915.00
Total cost
$23,015.00
*142 Continental Shares, Inc., hereinafter called Continental, was a corporation organized in March 1926, under and by virtue of the laws of the State of Maryland, as an investment company of the general management type with a paid-in capital of $6,500,000 representing 50 per cent of subscriptions to a total of 130,000 shares of authorized and issued common shares at a price of $50 per share. Its principal place of business was located in the city of Cleveland, Ohio. Its chief purpose was to acquire substantial holdings, either alone or together with important interests, in prominent companies in such basic industries as steel, rubber and public utilities. The capital and surplus of Continental were increased from time to time by additional payments on the original capital stock, sale of preferred stock and exercise of rights by common stockholders. On or about October 28, 1930, Continental borrowed $30,000.00 from the Chase National Bank of New York City, and borrowed large amounts from other banks, contemporaneously with the purchase by it of investments owned by Foreign Utilities, Ltd., hereinafter called Utilities, an investment company, for an amount of approximately $45,400,000, *143 $35,000,000 payable in cash and the balance in shares of common stock of Continental. These loans were secured by the pledge of large amounts of securities belonging to Continental which it had acquired prior to, or in connection with, the transaction with Utilities. In April 1931, George L. Gugle, a stockholder of Continental, filed a suit in the Maryland Circuit Court at Baltimore, Maryland, at which city the annual meeting of Continental was to be held, alleging mismanagement of Continental in connection with the purchase of assets from Utilities, praying an injunction against the ratification of the actions of the officers and board of directors of Continental by the stockholders, an accounting, and an opportunity to examine the books of the company. Thereafter, in the early part of the year 1931, actions were filed by stockholders of Continental for and on behalf of the company in the Common Pleas Court of Cuyahoga County, Ohio, alleging mismanagement of Continental by the officers and directors thereof and praying for relief on behalf of Continental against certain of its officers and directors as well as other individuals and corporations with respect to various transactions *144 of the company, one of such cases being entitled Charles S. Wachner, et al., plaintiffs, v. Cyrus S. Eaton, et al., defendants, No. 353999 on the docket of said court. After change in the management of Continental on April 25, 1931, the management advised stockholders of Continental that to the best of its judgment, common stock of the corporation had a value of $1.84 per share as of the close of business June 30, 1931. Continental was unable to meet its obligations on the loan made to it by the Chase National Bank of New York City. The Chase National Bank having announced its intention to sell the securities pledged by Continental to secure payment of said loan, a suit was filed in the early part of 1933 by stockholders of Continental for and on behalf of the company in the State of New York in the United States District Court for the Southern District of New York and alleging, substantially, that the $30,000,000 loan from the Chase National Bank to Continental in connection with the sale of assets of Utilities to Continental was made by the Chase National Bank with the knowledge that such sale of assets involved mismanagement of the affairs of Continental by its officers and directors, *145 and praying for an injunction against the sale; that the power of sale and pledge agreements contained in the notes evidencing the indebtedness be declared invalid; and that a receiver be appointed to liquidate the securities held by the Chase National Bank. Thereafter, on or about June 13, 1933, George L. Gugle filed in the Circuit Court of Maryland at Baltimore, Maryland, a bill of complaint in case No. 19090A in said court, entitled George L. Gugle, plaintiff v. Continental Shares, Inc., defendant, praying for the appointment of a receiver for Continental. On the same day, the Maryland Circuit Court entered an order requiring the defendant to show cause why a receiver should not be appointed. On June 12, 1933, a motion was filed for the appointment of a receiver for Continental in the case of Charles S. Wachner, plaintiff, v. Continental Shares, Inc., et al., No. 353999 on the docket of the Common Pleas Court of Cuyahoga County, Ohio. On June 22, 1933, in default of cause to the contrary being shown and after an ex parte hearing, William D. MacMillan of Baltimore, Maryland, was appointed by the Maryland Circuit Court in the action pending in the Maryland Circuit Court as domiciliary *146 receiver of all of the assets and property of Continental. On the same day, Charles S. Wachner of Cleveland, Ohio, was appointed by the Common Pleas Court of Cuyahoga County, in the action pending in that court, as ancillary receiver, with authority, among other things, immediately to take possession of all of the property of every kind and nature belonging to Continental and located in the State of Ohio; to preserve the property and to administer it, subject to the orders of the Common Pleas Court. At the time of the appointment of the receivers, and thereafter, the capital stock of Continental authorized, issued, and outstanding, consisted of the following: Shares
Par Value
Preferred ( $100 par value)
Series A original issue
29,620
$ 2,962,000
Series B
120,079
12,007,900
Convertible Preferred
( $100 par value) Issued
231,675
23,167,500
$38,137,400
Common (no par value)
Issued
2,517,336
Founders Shares (non-vot-
ing) Authorized and is-
sued (without par value)
10,000 Holders of preferred shares were entitled to dividends at the rate of 6 per cent of the par value thereof, cumulative, payable quarter-annually, and, upon default in payment *147 of such dividends for four consecutive quarterly periods, to one vote for each share of preferred stock, voting rights being otherwise confined exclusively to the common stock. No preferred dividends were paid after December 15, 1930. The last dividend paid on the common stock was $0.25 per share, paid on January 2, 1931. Thereafter and prior to September 7, 1934, claims of persons claiming to be creditors of Continental but whose claims were not recognized by the receiver, in the aggregate amount of $16,754,528.05 were presented informally to Charles S. Wachner, as receiver, and Charles S. Wachner, as such receiver, conducted negotiations with reference to the possible adjustment of such claims. The receivers issued financial statements as follows: On June 22, 1933, showing assets of approximately $16,000,000, liabilities approximately $10,000,000; December 13, 1933, showing assets of approximately $6,000,000, liabilities approximately $3,000,000; December 31, 1933, showing assets of approximately $6,000,000, liabilities approximately $8,750,000. The liabilities above stated were exclusive of stock liability, and the company had outstanding preferred stock of about $38,000,000. *148 The financial statements of June 22, 1933 and December 13, 1933, do not include in the liabilities the aforesaid unallowed claims. On September 7, 1934, the receivers issued a notice to the stockholders as to financial condition, which was the first notice in regard thereto. On or about April 27, 1936, the Common Pleas Court of Cuyahoga County, Ohio, approved a plan of settlement between the receivers and the Chase National Bank of New York. After a hearing at which the plan was objected to by certain stockholders, the Maryland Circuit Court, on or about June 25, 1936, entered an order approving the plan, as modified in accordance with the court's views so as not to provide for posting of collateral by the receivers to secure the deferred part of the settlement by the receivers with the Chase National Bank. On or about July 2, 1936 the order of April 27, 1936 by the Common Pleas Court of Cuyahoga County was amended and modified by order of that court to conform with the order of the Maryland Circuit Court, and the settlement was accordingly completed. In November 1933, the stock of Continental was removed from the Stock Exchange. However, during the year 1936, common shares of *149 Continental were bought and sold as follows: March 24
300 shares at 10 cents per share.
March 30
50 shares at 9 cents per share.
May 1
250 shares at 8 cents per share.
Nov. 5
200 shares at 20 cents per share.
The charter of Continental was forfeited under the laws of Maryland in the year 1936, and in June a committee of preferred stockholders, known as the Charls Committee, issued a statement to the preferred stockholders of the company suggesting a reorganization of Continental. In July 1936, a committee of preferred stockholders, known as the Scott Committee, was organized, and on August 17, 1936, issued a circular to preferred stockholders entitled "Plan of Reorganization" which provided, among other things, for the issuance of one share of stock of Continental, as reorganized to have only one class of stock, for each 200 shares of common stock of Continental. A further committee for common stockholders was organized, consisting of Messrs. Poston, Laichet and Daley. The Charls Committee and the Scott Committee agreed upon the basic terms of the Plan of Reorganization submitted by the Scott Committee, but disagreed as to the management of the proposed new *150 company. On July 6, 1937, the Palmer Securities Corporation, hereinafter called Palmer, a preferred stockholder of Continental, filed a petitioner in Circuit Court No. 2 in Baltimore in the receivership case, praying that the affairs of Continental might be wound up and its remaining assets, after payment of indebtedness, distributed to the preferred stockholders. The Scott Committee recommended to preferred stockholders that they support the Palmer petition because no harmonious program could be worked out which would be fair to preferred stockholders, while the Charls Committee continued to recommend the reorganization on the basis, substantially, of the plan proposed by the Scott Committee. Pleadings were filed by the various committees in the proceeding setting forth their views. A hearing was had and as a result, the Maryland Court on October 23, 1937, filed its opinion and reserved action on the petition of Palmer, until a plan of reorganization fair to all concerned should be submitted, and stated that if such plan should have the approval of the court, a further time would be afforded in which to obtain such assents thereto as might be necessary in order to carry the plan *151 into effect. After various hearings on the petitions and objections thereto, the Maryland Circuit Court on or about May 9, 1938, issued a decree, to become final on June 27, 1938, providing for transfer of the assets held by the receivers to a new corporation on the basis therein described, including issuance of one share of common stock of the new corporation for each 200 shares of common stock of Continental. A final decree was issued by the Maryland Circuit Court on June 29, 1938, and no appeal was taken therefrom. After further litigation by various of the interested parties in the Common Pleas Court of Cuyahoga County, Ohio, in case No. 353,999, the Common Pleas Court on October 30, 1939, held that the decree of the Maryland Circuit Court was final and valid and was binding upon the parties in interest and entitled to full faith and credit in the courts of Ohio. This judgment was affirmed by the Court of Appeals of Cuyahoga County on January 2, 1940. Pursuant to the decree of the Maryland Circuit Court, and after the decree of the Common Pleas Court of Cuyahoga County of October 30, 1939, the Scott Committee on October 30, 1939, issued a circular to preferred stockholders *152 of Continental outlining the plan. Thereafter Liquidating Shares, Inc., hereinafter called Liquidating, was organized on or about December 15, 1939. On or about January 19, 1940, MacMillan and Wachner, receivers, filed applications in the Maryland Circuit Court and the Court of Common Pleas of Cuyahoga County, Ohio, respectively, asking that each court enter an order directing all claimants other than stockholders and claimants who had already filed claims, to file their claims against Continental and the assets in the possession of either or both of said receivers, authorizing the publication of the court's order for two weeks, and decreeing that any claimants who should fail to file their claims within the time specified should be forever barred from asserting the same against either Continental or the property and assets held by such receivers, or the new corporation organized for the purpose of liquidating and distributing the assets. Such orders were duly granted. On or about February 10, 1940. applications of such receivers were filed in the Maryland Circuit Court and the Common Pleas Court of Cuyahoga County and an application was filed by Liquidating in the Maryland Circuit *153 Court in the receivership case, for orders approving and authorizing execution of agreements to be entered into by the receivers with Liquidating, and other instruments involved in the transfer of the assets from said receivers to Liquidating, and approval thereof was decreed by such courts. Thereupon, in February 1940, pursuant to the authority granted, all of the assets held by the receivers were transferred to Liquidating in accordance with the plan outlined. These assets (less certain assets retained for expenses of the receivership) were transferred to Liquidating in exchange for 381,374 shares of its capital stock, and Liquidating was authorized to issue simultaneously with, or before or after the exchange of such assets for shares of capital stock of Liquidating, and did issue, not to exceed 12,587 shares of stock of Liquidating, to holders of, and in exchange for, shares of common stock or founders' stock of Continental on the basis of one share of stock of Liquidating for 200 shares of common stock, or founders' stock, of Continental. Pursuant to the plan, on May 9, 1940, the petitioner exchanged 590 shares of Continental (which includes the 550 shares heretofore set forth) *154 incidental to the liquidating proceedings of Continental, and received in lieu thereof the following: 2 shares of Liquidating Shares, Inc. 6/8ths Cliffs Corporation warrants 190/200ths of 1 share of Liquidating Shares, Inc., scrip. During the period of existence of Liquidating, the shares of its stock were bought and sold on the open market at the following price ranges per share: High
Low
Feb. 15, 1940 to November, 1940
5 3/4
2 1/4
In November, 1940 a liquidat-
ing dividend of $1 per share
was paid.
November, 1940 to January 15,
1941
4 3/4
4
On January 15, 1941 a further
liquidating dividend of $2.20
per share was paid.
January 15, 1941 to July 18, 1941
2.60
1.60
On July 18, 1941 a further liq-
uidating dividend of $1.50 per
share was paid.
July 18, 1941 to December 26,
1941 (date of final liquidating
dividend)
0.64
0.45
On December 26, 1941 a final
liquidating dividend of $0.688
was paid.
Upon the above two shares of Liquidating, petitioner received the following dividends: November 8, 1940
$ 2.00
April 4, 1941
4.50
July 16, 1941
3.00
December 29, 1941 (final
dividend)
1.38
Total
$10.88
On April 12, 1944 from sale of the above
6/8ths share of Cliffs Corporation stock
$9.75
The above 190/200ths of a share of Liqui-
dating Shares, scrip, was allowed to
lapse so that nothing was actually col-
lected thereupon, but was reasonably
worth
7.60
*155 Liquidating completed liquidation of its assets on or about December 26, 1941. The petitioner claims a deduction in computing his income tax liability for the year 1941 of the sum of $11,509.56 alleged to represent long-term capital loss, being 50 per cent of the difference between cost to the petitioner of the aforesaid 550 shares of common stock of Continental and the aggregate amount of $20.63 received by him in the years 1940 and 1941 from dividends on stock of Liquidating and the sale of six-eights of a share of Cliffs Corporation stock. The respondent determined that no deduction was allowable to the petitioner in the year 1941 by reason of the final receipt of the dividends and sale price of the fractional share of stock of Cliffs Corporation, for the reason that the common stock of Continental had been determined to be worthless in the year 1933, and disallowed the loss claimed by the petitioner. During the year 1935 Richard J. Lamb sold 150 shares of common stock of Continental having a cost to him of $7,339.50, for the total sum of $1. The record discloses the following additional facts: During the period from April 23, 1936 to December 28, 1937, a prominent brokerage *156 firm of Cleveland made 70 over-the-counter sales of Continental common shares at prices ranging from six cents to 78 cents per share, in amounts averaging about 210 shares per transaction. Another firm in that city made 30 such sales from March 11, 1936 to July 9, 1937, at prices ranging from five cents to 70 cents per share and in amounts averaging about 275 shares per sale. On January 30, 1937, 4,420 shares of Continental common stock were appraised at 15 cents each for inheritance tax purposes. Later in that year, 4,320 of such shares were sold for prices ranging from 65 cents to 80 cents per share. Opinion VAN FOSSAN, Judge: The sole question here presented is whether the 550 Continental shares held by the petitioner, and represented by shares of Liquidating and warrants of Cliffs Corporation, became worthless in 1941 or at some prior time. The respondent has determined that the stock became worthless in 1933 and the consequent loss was deductible in that year. The petitioner contends that subsequent to 1933 Continental stock had a "potential value" which finally was extinguished upon the receipt of a "final dividend" of $1.38 on December 29, 1941. For convenience of discussion, *157 we will refer to the petitioner's stock as Continental stock, having in mind the substitution of Liquidating stock, as recited in the record. Losses on stock are recognized only in the year in which the stock becomes worthless and may not be postponed to a later date to suit the tax convenience of the holder. ; . In the recent case of , decided by the United States District Court for the Eastern District of Wisconsin, the plaintiff claimed a loss on Continental common stock in 1940. There the court held: A number of identifying events in 1933 show that the common stock of Continental Shares, Inc., became worthless in that year. The company was insolvent. Receivers were appointed. The stock was removed from the stock exchange. The stock for which taxpayer had paid approximately $35.00 a share was selling on December 31, 1933, at 6 2/3 a share. Plaintiff earnestly contends that the fact the stock had some nominal value proves conclusively that it was not valueless. However, the authorities *158 seem to be practically unanimous on the proposition that when stock has become worthless in a prior year, a sale in a later year for a nominal amount does not give rise to a deductible loss. ; ; , ; ; ; ; ; ; ; ; ; ; affirmed ; . Plaintiff cites several cases in which the corporation continued in the operation of its business. These cases can be distinguished from the case at bar because Continental Shares, Inc. was in liquidation. *159 Plaintiff has not maintained the burden upon him to show that his shares of the common stock of Continental Shares, Inc. had any value in 1940. On the contrary it appears that the stock was valueless as early as 1933. Therefore, plaintiff is not entitled to claim a loss in 1940 upon the sale of the shares in Liquidating Shares, Inc., and Cliffs Corporation. While every case is decided on its own facts and the cited case is in no wise controlling, the reasoning of the court as shown above accords with our view of the law. The basic facts before the court in the cited cases parallel those presented here. It is obvious that the stock became worthless prior to the taxable year. The evidence offered by the petitioner to the effect that the stock had some small value in the period intervening between 1933 and 1941 and relied upon by him as the vital point in his argument, has no probative weight. Some over-the-counter market activities, slight in proportion to the amount of stock outstanding, occurred during the years 1936 and 1937. In relation to the original value of the stock the sales were made only in nominal figures. In that period the stock had only a speculative value but had *160 no real value. The petitioner has failed to sustain his burden of proving that the respondent's determination is erroneous. Therefore, we approve the respondent's action. Decision will be entered for the respondent.